

FRANK N. DARRAS #128904
SHERNOFF BIDART & DARRAS, LLP
3257 East Guasti Road, Suite 300
Ontario, CA 91761
Telephone:  (909) 390-3770
Facsimile:   (909) 974-2121
Email: fdarras@sbd-law.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUANG P. ZHAO,<br><br>     Plaintiff,<br><br>vs.<br><br>METROPOLITAN LIFE INSURANCE COMPANY; and, CITIGROUP LTD PLAN,<br><br>     Defendants. | Case No. C 07 - 2867<br><br>COMPLAINT FOR BENEFITS UNDER A GROUP DISABILITY EMPLOYEE BENEFIT PLAN |

Plaintiff alleges as follows:

1.  This Court's Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1337 and 29 U.S.C. §1132(a), (e), (f) and (g), of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1101, *et seq*. (hereafter "ERISA") as it involves a claim by Plaintiff for Disability benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.

2.  The events or omissions giving rise to Plaintiff's claim occurred in this judicial district, thus venue is proper here pursuant to 28 U.S.C. §1391(b)(2), and the ends of justice so require.



- 1 -
COMPLAINT

3. The ERISA statute at 29 U.S.C. § 1133, in accordance with Regulations of the Secretary of Labor, provides a mechanism for internal appeal of benefit denials. Those avenues of appeal have been exhausted.

4. Plaintiff is informed and believes and thereon alleges that Defendant, CITIGROUP LTD PLAN, is an employee welfare benefit plan established and maintained by Citigroup (which, Plaintiff alleges, also does business in the State of California), to provide its employees with income protection in the event of a disability, and, is the Plan Administrator.

5. Plaintiff alleges upon information and belief that Defendant, METROPOLITAN LIFE INSURANCE COMPANY ("METLIFE"), is, and at all relevant times was, a corporation duly organized and existing under and by virtue of the laws of the State of New York; authorized to transact and transacting the business of insurance in this state; and, the insurer and Claims Administrator for the Plan.

6. At all relevant times Plaintiff was, a resident and citizen of the State of California, an employee of Citigroup, its affiliates or subsidiaries, and a participant in the Plan.

7. Plaintiff alleges upon information and belief that METLIFE issued a Group Policy to Citigroup to insure its Plan, and the eligible participants and beneficiaries of the Plan, including Plaintiff, and that the Plan provided monthly benefits to be paid by METLIFE should MS. ZHAO become disabled.

8. At the time of her disability, Plaintiff had been a Financial Associate (bank teller) with Citigroup. In or about December, 2003, MS. ZHAO became disabled under the terms of the Plan and submitted a claim to METLIFE. METLIFE subsequently paid MS. ZHAO short term disability benefits, but unreasonably, arbitrarily and capriciously denied her any long term disability benefits, even though she was entitled to them.

9. On or about March 5, 2004, R. Thomas Grotz, M.D., an orthopedic surgeon, examined MS. ZHAO and subsequently reported on or about that date:

- "This patent was well and able to perform her job tasks, in a comfortable

and confident fashion until 9/30/03, essentially."

- "She has a job with repetitive tasks, and one of these...is removing a cash drawer from the vault at the beginning of the shift and placing it back at the end of the shift."

- "The drawer weighs abut 20 pounds, depending upon how much change is in it."

- "On 9/30/03 she felt a sharp pain in the right shoulder...while lifting."

- "She continued to try to work for the subsequent two months, however, progressive aches and pains, feelings of pins and needles and dysesthesias developed."

- "Finally, the patient's pain became so severe that she was not capable of moving her shoulder in certain directions, and the aching in the arm down to the elbow on the right proved intolerable."

- "X-rays of the shoulder were studied, comparing abduction, adduction, with and without weight, and axillary."

- "There was definite impingement bilaterally with abduction axillary views."

- She "...has a right greater than left shoulder impingement[1] arthropathy with lateral right epicondylitis of the elbow and a...cervical strain syndrome."

- "...we anticipate temporary disability through 5/5/04."

10. On or about May 24, 2004, METLIFE interviewed MS. ZHAO and was advised of the following:

---

[1] Impingement refers to mechanical compression and/or wear of the rotator cuff tendons. The rotator cuff is actually a series of four muscles connecting the scapula (shoulder blade) to the humeral head (upper part of the shoulder joint.) The rotator cuff is important in maintaining the humeral head within the glenoid (socket) during normal shoulder function and also contributes to shoulder strength during activity. Normally, the rotator cuff glides smoothly between the undersurface of the acromion, the bone at the point of the shoulder and the humeral head. Any process which compromises this normal gliding function may lead to mechanical impingement. The diagnosis of shoulder impingement can usually be made with a careful history and physical exam.

- 3 -
COMPLAINT

- "The EE's occupation is a bank teller and she states that due to repetitive lifting of the cash drawer her right shoulder started hurting..."
- "DOD [date of disability] is 12/22/03[2]."
- "EE is attending PT [physical therapy] as of 3/5/04..."

11. On or about June 2, 2004, METLIFE unreasonably, arbitrarily and capriciously denied MS. ZHAO long term disability benefits. According to METLIFE's letter:

| Allegations | True Facts |
|---|---|
| • "...you ceased work on December 26, 2003." <br> • "Short-term Disability Benefits were paid from the period of 12/26/03 through 03/25/04." | |
| "...we do not find available medical documentation is consistent in demonstrating a severity of symptoms as to preclude you from performing the essential duties of your own occupation as a Financial Associate." | ▫ Plaintiff alleges upon information and belief that METLIFE misrepresented the terms of the Policy as it does not require "a severity of symptoms" in order to qualify for long term disability benefits. <br> ▫ METLIFE did not have MS. ZHAO independently examined prior to this denial, and, therefore, had no specific, legitimate reasons for rejecting the treating physician's opinions that MS. ZHAO was disabled. <br> ▫ Plaintiff alleges upon information and belief that METLIFE did not have a doctor review the medical records prior to this |

---

[2] This was later amended by METLIFE in a Diary Review Report which stated: "...The EE's last date worked was 12/24/04..."

| Allegations | True Facts |
|---|---|
| | denial of benefits. |

12. On or about July 19, 2004, Dr. Grotz, who wrote that he "anticipated" temporary total disability through "8/25/04," also substantiated MS. ZHAO's disability with the following notations:

- "...right shoulder was injured on the job."
- "The patient worked for CitiGroup...as a bank teller...one of her responsibilities was to lift a relatively heavy drawer filled with coins."
- "...in the process of elevating it...to above the shoulder, pain accrued in the dorsolateral right shoulder and basilar neck."
- "This resulted in a substantial shoulder impingement arthropathy and...along with the other tasks...she developed repetitive strain or cumulative trauma syndrome."
- "...on three occasions I have injected the dorsolateral shoulder..."
- "...the relief of pain after the subacromial injection...proved the clinical presence of shoulder impingement syndrome."
- "We recommended that she proceed to physical therapy..."
- "She had a total of 15 therapy visits...over the course of two months[3]."
- "X-rays were studied and there was definitely impingement bilaterally on the abduction views."
- **DISCUSSION AND RECOMMENDATIONS:**
    - "Guang Ping Zhao has a right shoulder recalcitrant lateral impingement arthropathy."
    - "We recommend temporary disability through 8/25/04."
    - "There is an 80% probability that...an arthroscopic treatment will

---

[3] Based upon information and belief, Plaintiff alleges that METLIFE unreasonably, arbitrarily and capriciously failed to obtain these relevant medical records.

        permanently decrease her pain and improve her function."

- "There is a 15 to 20% chance that she would require a second surgical procedure..."

13. A follow up visit to Dr. Grotz on or about August 25, 2004, continued to provide confirmation of MS. ZHAO's disability. According to Dr. Grotz report on or about this date:

- "The patient does have admitted subscromial and subdeltoid bursal fluid, suggesting bursitis in those regions where it continues to ache."
- "Her basilar neck hurts too."
- "X-rays were acquired, per the attached report." (NOTE: The attached report found that "Shoulder impingement was confirmed.")
- "This patient has a right shoulder impingement arthropathy recalcitrant in character."
- "She tried to go back to work on 7/12/04, but...pain precluded that prospect."
- "...temporary disability is expected through 11/3/04."
- "We believe it will probably be necessary to provide a right shoulder arthroscopic inspection and debridement with decompression and care..."

14. Still unable to perform the substantial and material duties of her occupation, on or about November 3, 2004, MS. ZHAO once again was treated and examined by Dr. Grotz, who reported on or about that date:

- "Guang Ping Zhao...had a chronic problem involving her shoulders with aching pain in the right greater than left."
- "It is chronic, awakens her from sleep and limits her activities throughout the day."
- "She has not only pain, but a sense of instability."
- "Pain has increased especially with external rotation abduction."
- "The patient saw a qualified medical evaluation physician, Eugene Galvin,

M.D., on 10/8/04."

- "Objectively, he found a decreased range of motion in the shoulder...He suggested that I felt the patient may benefit from arthroscopic surgery, which is correct."
- "He...went on to indicate that she might wish to obtain another orthopedic opinion by other doctors who devote a majority of their practice just to shoulder surgery."
- "For the record, of the 8,000 surgeries I have done, 3,000 have been on the shoulder."
- "Dr. Galvin recommended that the patient could be considered temporarily partially disabled."
- "I should also point out that we have treated her with a number of anti inflammatories in the past...one that would reduce discomfort without adverse side effects...She has already had Bextra[4], Celebrex[5], Vioxx[6], Mobic[7], and Arthrotec today."
- "We will...[try]...Relafen[8]..."
- "This patient has right shoulder impingement arthropathy greater than left, recalcitrant in character."

---

[4] Side effects of this medication include: headache; abdominal pain; diarrhea; nausea; flatulence and insomnia. (**NOTE:** April 7, 2005, Pfizer agreed to suspend sales and marketing of Bextra in the U.S., pending further discussions with the FDA.)

[5] Side effects of this medication include: headache, abdominal pain, dyspepsia, diarrhea, nausea, flatulence and insomnia.

[6] Side effects of this medication include: headache, abdominal pain, dyspepsia, diarrhea, nausea, heartburn and water retention. (NOTE: On September 30, 2004 the Food and Drug Administration (FDA) acknowledged the voluntary withdrawal from the market of Vioxx (chemical name rofecoxib), a nonsteroidal antiinflammatory drug (NSAID) manufactured by Merck & Co.)

[7] Side effects of this medication include: nausea, vomiting, abdominal pain, diarrhea and gas.

[8] Side effects of this medication include: Upset stomach, diarrhea or constipation, nausea, vomiting, unusual fatigue, drowsiness, or headache.

1  • "It has been treated conservatively for over a year, and has not
2  improved.'"
3  • "She will probably remain the same or get worse."
4  • "Temporary disability is expected through 2/28/05."
5  15.    On or about April 28, 2005, MS. ZHAO wrote to METLIFE to advise that
6  she would be undergoing surgery. According to that letter:
7  • "I have decided to accept...[Dr. Grotz'] recommendation to have surgery
8  on my shoulder[9]."
9  • "Note that treatments included physical therapy, acupuncture, cortisone
10 shots, recommended exercise, medications, etc."
11 • "Unfortunately, none of these solved the problems."
12 16.    However, instead of waiting for the outcome of the upcoming surgery, on
13 or about May 5, 2005, METLIFE upheld its unreasonable, arbitrary and capricious
14 denial of long term benefits and advised MS. ZHAO that "The administrative remedies
15 under the plan have been exhausted, and no further appeals will be considered."
16 17.    On or about August 8, 2005, Dr. Grotz continued his confirmation of MS.
17 ZHAO's disability, after an examination when he wrote the following:
18 • On "...7/28/05...a right shoulder arthropathy required extensive
19 subacromial decompression and other maneuvers..."
20 • "Guang Ping Zhao...is now healing from her surgical treatment."
21 • "At this juncture temporary total disability is expected through 11/28/05."
22 • "We...are hopeful that the patient will continue to improve without the
23 need for any secondary procedure as is required in about 15% of cases, due to
24 anatomic considerations in terms of a mini-open Neer acromioplasty."
25 18.    On or about October 19, 2006, MS. ZHAO wrote to METLIFE to obtain a
26 copy of any pertinent documents upon which the decision to terminate her claim was

---

[9] Even though MS. ZHAO subsequently underwent the surgery, she was still not able to perform the substantial and material duties of her occupation and is now facing a second surgery.

based, along with the LTD Plan and Summary Plan Descriptions. Plaintiff alleges upon information and belief that to date METLIFE has failed to provide all responsive documentation.

19. To date, even though MS. ZHAO has been, and remains, disabled, METLIFE has not paid MS. ZHAO any disability benefits past March 26, 2004. The arbitrary and capricious nature of METLIFE's denial decision is evidenced by, but not limited to, the following:

- METLIFE did not give proper weight to MS. ZHAO's pain complaints caused by an objectively documented injury;
- METLIFE did not give proper weight to the effect MS. ZHAO's pain medications have on her ability to work;
- METLIFE did not have MS. ZHAO independently examined to adequately refute the findings of her treating physicians; and,
- METLIFE ignored the opinions of MS. ZHAO's treating physicians. Deference should be given to the treating physician's opinions as there are no **specific**, **legitimate** reasons for rejecting the treating physician's opinions which are based on **substantial evidence** in the claim file. Further, METLIFE's **physician's** opinions do not serve as **substantial evidence**, as they are not **supported by evidence** in the claim file nor are they **consistent with the overall evidence** in the claim file.

20. For all the reasons set forth above, the decision to deny disability insurance benefits was arbitrary, capricious, wrongful, unreasonable, irrational, sorely contrary to the evidence, contrary to the terms of the Plan and contrary to law. Clearly, METLIFE abused its discretion in deciding to deny this claim as the evidence shows its denial decision was arbitrary and capricious. Further, METLIFE's denial decision and actions heighten the level of skepticism with which a court views a conflicted administrator's decision under *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955

(9th Cir. 2006).

21. As a direct and proximate result of the Defendants' failure to provide MS. ZHAO with disability benefits, MS. ZHAO has been deprived of said benefits from on or about March 26, 2004, to the present date.

22. As a further direct and proximate result of the denial of benefits, MS. ZHAO has been required to incur attorney fees to pursue this action, and is entitled to have such fees paid by defendants pursuant to 29 U.S.C. § 1132(g) (1), ERISA § 502(g) (1).

23. A controversy now exists between the parties as to whether MS. ZHAO is disabled as defined in the Plan. Plaintiff seeks the declaration of this Court that she meets the Plan definition of disability and thus she is entitled to benefits from the Plan.

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. An award of benefits in the amount not paid MS. ZHAO from on or about March 26, 2004, to the date of judgment herein, together with interest at the legal rate on each monthly payment from the date it became due until the date it is paid;

2. An order determining that MS. ZHAO is entitled to future payments so long as she remains disabled as defined in the Plan;

3. An order requiring METLIFE to pay $110 a day, from the date first requested, for each day in which METLIFE failed or refused to comply with Plaintiff's requests for information which METLIFE was required, by statute/regulation, to furnish pursuant to ERISA section 502(c) [29 USC sec. 1132(c)].

4. For reasonable attorney fees incurred in this action; and

5. For such other and further relief as the Court deems just and proper.

DATED: May 31, 2007

SHERNOFF BIDART & DARRAS, LLP

FRANK N. DARRAS
Attorney for Plaintiff